**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Certain Underwriters at Lloyd's,<br><br>Plaintiff,<br><br>v.<br><br>Bertha Elena Castillo,<br><br>Defendant. | No. CV-25-02238-PHX-SHD<br><br>**ORDER** |

  Plaintiffs Certain Underwriters at Lloyd's ("Underwriters") initiated this action on June 26, 2025, and served the Complaint on July 30, 2025, (Doc. 7). Defendant Bertha Elena Castillo did not respond to the Complaint. On September 10, 2025, the Clerk's Office entered default against Castillo pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 10.) Underwriters filed a Motion for Default Judgment on September 24, 2025. (Doc. 11.) Castillo has not filed a response, and the time to do so has passed. For the reasons set forth below, however, the Court will require additional briefing from Underwriters before determining whether default judgment is appropriate.

**I. BACKGROUND**

  On June 27, 2023, Castillo, who does business as Joshua Trucking, picked up 39,641 pounds of frozen chicken ("the cargo") from a cold storage warehouse in Durant, Oklahoma. (Doc. 1 at ¶ 10.) Castillo was charged with delivering the cargo to Thrive Foods in American Fork, Utah. (*Id.*) When Castillo picked up the cargo in Oklahoma, it was "in good condition and properly prepared for shipment." (*Id.*) Despite clear

instructions to keep the cargo "at minus 10 degrees Fahrenheit (-10F)" for the duration of its journey, it arrived in Utah "in a thawed state." (*Id.* at ¶ 11.) Thrive Foods rejected the shipment. (*Id.*)

According to the Complaint, Thrive Foods submitted a claim to M8 Logistics, LLC ("M8"), for $142,846.52—the value of the cargo. (*Id.* at ¶ 12.) "M8 paid Thrive Foods for the underlying loss and was assigned all rights of recovery from Thrive Foods." (*Id.* at ¶ 12.) Plaintiff Underwriters—who insures M8 under a cargo insurance policy—then paid M8, "and thereby acquired all rights of recovery against responsible third parties from M8."[1] (*Id.* at ¶ 13.) Underwriters now seeks recovery of damages from Castillo under 49 U.S.C. § 14706, also known as the Carmack Amendment, "for the loss and/or damage of the cargo" in the course of transportation in interstate commerce. (*Id.* at ¶ 9.)

## II.   LEGAL STANDARD

The Court may enter default judgment pursuant to Rule 55(b) upon the entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). Before assessing the merits of a default judgment, district courts must confirm that they have jurisdiction over the case and the parties. *Capitol Specialty Ins. Co. v. Chaldean LLC*, 2022 WL 2953062, at *1 n.1 (D. Ariz. 2022). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). But courts must consider the following factors in deciding whether default judgment is warranted: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the Complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "The Court analyzes these factors taking as true the allegations in the complaint, except those relating to damages." *Fed. Trade Comm'n v. Money Now Funding LLC*, 2015 WL 11120847, at *1

---

[1] The Complaint alleges that M8 paid Thrive Foods "for the underlying loss," and that Underwriters then paid "M8's claim" but does not otherwise specify the amounts paid by either Underwriters or M8. (Doc 1 at ¶ 13.) But Underwriters' motion for default judgment suggests that Underwriters paid Thrive Foods directly, on M8's behalf, and that it paid only $95,000, not the full claim amount. (Doc. 11 at 3.)

(D. Ariz. 2015).  Based upon the analysis below, the Court is not convinced, on this record, that it has jurisdiction and that Underwriters has established the appropriate damages to warrant judgment against Castillo, even though the *Eitel* factors largely favor entry of a default judgment.

## III.   DISCUSSION

### A. Jurisdiction

District courts have "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies" so long as the amount in controversy "exceeds $10,000, exclusive of interest and costs."  28 U.S.C. § 1337(a).  This action involves the liability of a motor carrier under 49 U.S.C. § 14706—an Act of Congress that regulates interstate commerce—and the amount in controversy exceeds $10,000, exclusive of interest and costs.  The Court therefore has subject matter jurisdiction over this case.

It is unclear whether the Court has personal jurisdiction over Castillo.  Underwriters does not address personal jurisdiction in its motion for default judgment; presumably, it relies on the allegations in its Complaint.  (*See* generally, Doc. 11.)  There, Underwriters alleges that "Castillo, doing business as Joshua Trucking, is a business entity of unknown form with a principal place of business in Yuma, Arizona as reflected in U.S. Department of Transportation records."  (Doc. 1 at ¶ 3.)

To the extent Underwriters wishes to bring its claims against Joshua Trucking, rather than or in addition to Castillo as an individual, it has failed to properly name Joshua Trucking as a defendant.  "The phrase 'doing business as' is used when a corporation's operating name is different from its legal, registered name, including when an individual operates a sole proprietorship or partnership under a 'fictitious' name."  *Ridgway v. Phillips*, 383 F. Supp. 3d 938, 944 (N.D. Cal. 2019).  Simply adding "doing business as Joshua Trucking" to the caption does not suffice to properly name Joshua Trucking as a defendant.  *See id.* (holding that "doing business as" is not enough to name a business entity as a defendant).  Indeed, it is not even clear that Joshua Trucking is a business entity

susceptible to suit. (Doc. 1 at ¶ 3 (describing Joshua Trucking as "a business entity of unknown form").)

Further, the Complaint contains no allegations about Castillo in her individual capacity, instead relying on its allegation that Joshua Trucking's principal place of business is Yuma, Arizona.[2] (Doc. 1 at ¶ 3.) Underwriters has made no argument that Castillo's relationship with Joshua Trucking is sufficient to subject her to this Court's jurisdiction. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (stating that the Constitution requires that defendants have "certain minimum contacts with a forum state" to establish personal jurisdiction). And personal jurisdiction over Castillo is not apparent from the record: the events giving rise to this action did not occur in Arizona; the only other address on record for Castillo is in San Diego, California, (Doc. 11-2 at 1); and service occurred to an agent in South Dakota, (Doc. 7-1 at 1). Absent jurisdiction over Castillo, the Court cannot grant default judgment. *See Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973) ("The district court's lack of in personam jurisdiction over [defendants] renders void its default judgment against them."). However, because Underwriters has not briefed personal jurisdiction, it will be given the opportunity to do so. *See In re Tuli*, 172 F.3d 707, 713 (9th Cir. 1999).

### B. Service

Additionally, the Court is not confident that Castillo was properly served. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process."). Service was executed on "Margaret Samp, Head of Customer Service" in Sioux Falls, South Dakota, at an address that appears to the Court to be a restaurant called "The Thirsty Duck." (*See* Doc. 7-1.) Underwriters maintains that Samp is Castillo's "designated agent." (Doc. 7.) This assertion is unconvincing given Underwriters' conflation of Joshua Trucking with Castillo, and the absence of any evidence that Samp is affiliated with either

---

[2]   Underwriters may be assuming that Joshua Trucking's registered address is also Castillo's residence, but this is doubtful, as a Google search shows it to be the location of a Staples Office Supply store. (*See* Doc. 7-1 at 1.)

Joshua Trucking or Castillo. In short, the Court cannot say whether service was proper, and will seek additional briefing on the issue of service.

The Court turns next to the *Eitel* factors, and finally to the issue of damages.

### C. *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiff

The Court cannot determine without further briefing whether the first *Eitel* factor weighs in favor of default judgment. Castillo has not responded to the Complaint, but, as discussed, she may not have been properly served. *See supra,* Section III(B). Castillo also failed to respond to at least two other attempts by Underwriters to recover their damages, but these demand letters seem to have been sent to Joshua Trucking's Yuma address, and may not have ever reached Castillo. (Doc. 11-1 at ¶ 6.) It is thus unclear whether, absent default judgment, Underwriters will be without other recourse. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F Supp. 2d 1172, 1177 (C.D. Cal. 2002).

#### 2. Merits of the Claim and Sufficiency of the Complaint

The second and third *Eitel* factors favor default judgment. Underwriters brings only one claim against Castillo: violation of the Carmack Amendment, which imposes liability on carriers for "actual loss or injury to the property caused by" either receiving or delivering carriers. 49 U.S.C. § 14706(a)(1). To establish a violation of the Carmack Amendment, plaintiffs must allege "delivery in good condition, arrival in damaged condition, and the amount of damages." *Mo. Pac. R.R. Co. v Elmore & Stahl*, 377 U.S. 134, 138 (1964).

Underwriters sufficiently alleges the elements of a Carmack Amendment claim, namely, that (1) the cargo was picked up by Castillo in Oklahoma "in good condition and properly prepared for shipment," i.e., frozen, (2) the cargo was delivered to Thrive Foods in damaged condition, i.e., thawed and (3) the amount of damages was $142,846.52. Underwriters' claim is thus meritorious and sufficient.

#### 3. Amount of Money at Stake

In considering the fourth *Eitel* factor, the Court weighs the amount of money at stake

in relation to the seriousness of Defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Norris v. Shenzhen IVPS Tech. Co. Ltd.*, 2023 WL 3465203, at *8 (D. Ariz. 2023) (quotation marks omitted).

Underwriters seeks $142,826.52, or "the full value of the loss caused by the Defendant," in addition to prejudgment interest at a rate of 4.83% from the date of the payment to Thrive Foods, which occurred on December 26, 2023. (Doc. 11 at 6–7.) Based on the allegations in the Complaint, these alleged damages are proportionate to the harm caused, as they are equal to the claim of loss submitted by Thrive Foods. The fourth *Eitel* factor thus favors default judgment. However, as explained below, Underwriters has failed to provide sufficient evidence to support its requested relief, so the Court will defer resolving the motion for default judgment for this additional reason.

### 4. Possible Dispute Concerning Material Facts, Whether Default was Due to Excusable Neglect, and Policy Favoring a Decision on the Merits

Castillo has not participated in this litigation, so there is no dispute of material fact, and the fifth *Eitel* factor favors default judgment. *See Coe v. Hirsch*, 2021 WL 5634798, at *3 (D. Ariz. 2021) ("Where a party fails to defend an action . . . there is no dispute over material facts."). As discussed above, the Court has concerns about whether service of the Complaint and Summons was proper and cannot say, at this stage, whether Castillo's failure to answer is due to excusable neglect. The final factor typically disfavors default judgment given that cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But this factor does not preclude entry of default judgment. *PepsiCo*, 238 F. Supp. 2d at 1177. Further, the Court accepts as true the well-pled factual allegations in the Complaint upon default. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Thus, while the fifth factor weighs in favor of default judgment, the sixth and seventh remain an open question.

## IV. DAMAGES

"A Plaintiff seeking default judgment must prove all damages sought in the complaint." *Hiles v. Progressive Relocation Sys. Inc.*, 2021 WL 3046902, at *3 (D. Ariz 2021) *report and recommendation adopted Hiles v. Progressive Relocation Sys. Inc.*, 2021 WL 3419036 (D. Ariz. 2021) (cleaned up). The "ordinary measure of damages" in Carmack Amendment cases "is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive." *Gulf, Colorado & Santa Fe. Ry. Co. v. Texas Packing Co.,* 244 U.S. 31, 37 (1917).

Underwriters submits the demand letter from Thrive Foods to M8, which asserts a claim totaling $142,826.52 for the cargo. (Doc. 11-3.) The demand letter does not identify how Thrive Foods calculated its claim amount, stating only that $147,826.52 would "compensate Thrive Foods for the loss of 39,641 lbs. of frozen chicken." (*Id.*) It is thus unclear whether this amount represents the difference between the market value of the cargo in good condition and the market value of the cargo in its thawed state, or whether it includes other costs incurred by Thrive Foods as a result of the damaged shipment. *See Sunteck Trans. Co. v. Domestic Carrier, Inc.*, 2022 WL 17348190, at *5 (C.D. Cal. 2022) (holding that "re-shipment replacement costs, other costs associated with assessing and processing the damaged portion of the Cargo, and [ ] extensive mitigation efforts" included in claim for loss were not recoverable "under the market value rule"); *see also FNS, Inc. v. Proactive Supply Chain Gr. USA*, 2025 WL 3778530, at *9 (C.D. Cal. 2025) (holding that plaintiff failed to "prove up" its damages when it did not "provide[] any invoices to support the calculation of the total loss of the Subject Shipment and the freight to be $421,209.21"). Thus, the demand letter is insufficient to establish that Thrive Foods' "actual loss" under the Carmack Amendment was $142,826.52.

Additionally, Underwriters did not pay Thrive Foods $142,826.52. Rather, on M8's behalf, Underwriters paid Thrive Foods $95,000—the $100,000 policy limit less a $5,000

deductible—for its loss.[3] (Doc. 11-4.) While this payment may potentially demonstrate an entitlement to $95,000, it does not account for the additional $47,826.52 that Underwriters seeks. Although Underwriters alleges that Thrive Foods "assigned all rights of recovery" to M8, who then assigned the same to Underwriters, (Doc. 1 at ¶ 13), Underwriters has not presented any evidence of this assignment, (*see generally*, Doc. 11), and has not cited any authority to support the proposition that it may recover more from Castillo than the $95,000 it paid Thrive Foods. (*See* Doc. 11 at 6–7.) Nor is such a proposition self-evident. *See e.g.*, *Barnes v. Independent Auto. Dealers Ass'n of Cal. Health and Welfare Benefits*, 64 F.3d 1389, 1395 (9th Cir. 1995) (adopting "as federal common law" the "generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation"); *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1054 (9th Cir. 2007) (noting that, under California law, "[w]hen . . . the insured is only partially compensated by the insurer for a loss . . . [t]he insured retains the right to sue the responsible party for any loss not fully compensated by insurance, and the insurer has the right to sue the responsible party for the insurer's loss in paying on the insurance policy." (cleaned up)); *Safeway Ins. Co. v. Collins*, 963 P.2d 1085, 1087 (Ariz. Ct. App. 1998) (citing Ariz. Rev. Stat. § 20-259.01(I) for the proposition that once an insurer "pays its insured . . . it is subrogated to [the insured's] tort claim against the tortfeasors . . . *to the extent of the payment made* to the insured under the policy" (emphasis added)).

Without more information, the Court cannot determine the appropriate damages in this case.[4] *See FNS*, 2025 WL 3778530, at *9 (granting default judgment but deferring

---

[3] As noted above, Underwriter's motion for default judgment is not consistent with the allegations in the Complaint regarding who paid what to whom. (*Compare* Doc 1 at ¶¶ 12–13 *with* Doc. 11 at 3.) This contradiction is concerning and again indicates that Underwriters has not met its burden to prove its damages.

[4] Underwriters also seeks pre-judgment interest at a rate of 4.83% beginning on December 26, 2023—the date that it paid Thrive Foods. "The Carmack Amendment does not explicitly provide for the award of prejudgment interest." *Hiles*, 2021 WL 3046902, at *4 (quotation marks omitted). Nonetheless, district courts have discretion to award prejudgment interest when it is "necessary to make wronged parties whole". *Id.* (citing

- 8 -

ruling on damages when plaintiff did not meet its burden to demonstrate entitlement to requested amount). The Court will therefore defer entry of default judgment until Underwriters provides additional evidence and briefing.

Accordingly,

**IT IS ORDERED** deferring ruling on Underwriters' Motion for Entry of Default Judgment Against Defendant Castillo, (Doc. 16), until further evidence and briefing is submitted to the Court.

**IT IS FURTHER ORDERED** directing Underwriters to file supplemental briefing addressing the following: (1) whether the Court has personal jurisdiction over Castillo; (2) whether service on Castillo was proper; (3) substantiating its claim that Thrive Foods' actual loss was $142,826.52 and (4) explaining why Underwriters is entitled to recover more than $95,000 no later than **February 13, 2026**.

Dated this 29th day of January, 2026.

_____
Honorable Sharad H. Desai
United States District Judge

---

*Purcell v. United States*, 1 F.3d 932, 942–43 (9th Cir. 1993)). The Court will address the propriety of prejudgment interest when it rules on damages.